Commonwealth *v.* Lassiter, Appellant.

Argued March 19, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James H. Logan,* for appellant.

*Louis R. Paulick,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, July 1, 1974:

On December 16, 1970, appellant was found guilty by a jury of second-degree murder for the fatal stabbing of one Hampton Johnson and was sentenced to a term of ten to twenty years' imprisonment. This sentence was stayed pending the filing and disposition of posttrial motions which were then filed by appellant and dismissed by the lower court on February 14, 1972. On July 11, 1973, we granted leave to appeal nunc pro tunc and this direct appeal followed.

Appellant's initial argument is that the lower court erred in refusing to suppress certain items of evidence which, he alleges, were the fruit of (1) an illegal arrest and (2) an illegal search. The circumstances of the appellant's arrest and the accompanying seizure of evidence are as follows.

Shortly after noon on June 2, 1970, the stabbing giving rise to this prosecution occurred in the presence of several persons who knew the appellant by name. One of these witnesses, Mrs. Emma Paul, conveyed what she had seen to one Angus B. Hopson, a retired policeman. By coincidence, Hopson had personally witnessed an argument between appellant and the victim which had transpired in a nearby bar just prior to the stabbing. When the police arrived on the scene, Hopson conveyed the information which he had accumulat-

ed to them. On this basis, a broadcast went out over police radio to the effect that a stabbing had occurred in the vicinity of Hazlett Way and Penn Avenue in Pittsburgh and that one Ronald Lassiter (with a description) was being sought in connection therewith. Being in the vicinity of the crime, Officer James Hintemeyer responded to the broadcast and began looking for the suspect. He was told by an unknown individual that Ronald Lassiter was in a house at 3519 Mulberry Way. Upon arriving at that address, Hintemeyer noticed several people through an open door. One of the women in the house asked Hintemeyer what he wanted, to which he said that he was looking for Ronald Lassiter. The woman, Mrs. Boston, then invited the officer into the house, stating that Lassiter was present. Upon Hintemeyer's entrance into the house, appellant identified himself. At this time, Hintemeyer noticed a knife in a leather scabbard on the coffee table in front of appellant. He then asked appellant to come outside with him where he informed him that he was under arrest. As a result of these occurrences, certain items of appellant's clothing as well as the knife were seized as evidence.

The first question is whether there was probable cause to arrest the appellant. While conceding that an officer may arrest on the orders of superiors if the officer ordering the arrest possesses probable cause,[1] appellant nevertheless contends that the present situation is governed by *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), wherein this Court held an arrest to be illegal where the officer had acted on the tip of an informant who had merely relayed information which he had obtained through an anonymous eyewitness. 448 Pa. at 264, 293 A.2d at 36-37. The

---

[1] *Commonwealth v. Kenney*, 449 Pa. 562, 566, 297 A.2d 794, 796 (1972).

holding of *Garvin* was subsequently reaffirmed in *Commonwealth v. Smith,* 453 Pa. 326, 309 A.2d 413 (1973), where an arrest based on a telephone call from a reliable informant to the effect that he had "found out" that the accused had narcotics in his possession was invalidated.

There are admittedly some similarities between the *Garvin* and *Smith* cases and the instant case such as the use of hearsay information as part of the basis for probable cause to arrest. However, there are also some important, and we think controlling, points of distinction. Unlike the *Garvin* and *Smith* situations, the direct source of police information in the instant case was not an anonymous informer. Rather, he was a named private citizen who, incidentally, was a former policeman. Moreover, while Hopson had not witnessed the stabbing itself, he had personally observed the argument in the bar which immediately preceded the stabbing. Finally, both the "informer," Mr. Hopson, and one of his "sources," Mrs. Paul, were known by name to the police at the time the order to pick up appellant was issued.

It is well-settled that probable cause may be based on hearsay information in certain circumstances. Those circumstances, basically known as the *Aguilar-Spinelli* test, were explained by this Court in *Betrand Appeal,* 451 Pa. 381, 385, 303 A.2d 486, 488-89 (1973) : "It is also well settled that even hearsay information is sometimes sufficient to establish probable cause. See Draper v. United States, 358 U.S. 307, 79 S. Ct. 329 (1959) ; Brinegar v. United States, supra. However, when, as here, probable cause for a warrantless arrest is based on such hearsay information supplied by an anonymous informer, the arresting officer must have two types of additional information before probable cause is established. First, in order to assure that the tip is not merely an unsupported rumor, the officer must know

the underlying circumstances from which the informer concluded that the suspect participated in the robbery. Second, in order to reduce the possibility that a tip meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the tip was reliable. Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964); Commonwealth v. Garvin, 448 Pa. 258, 293 A.2d 33 (1972); cf. Commonwealth v. Mamon, 449 Pa. 249, 297 A.2d 471 (1972)." Applying this two-pronged test to the instant case, it is our view that probable cause was established. The "underlying circumstances" aspect is satisfied by the facts (1) that Hopson had personally observed an argument between appellant and the victim just prior to the stabbing, (2) that the rest of Hopson's information was based on named eyewitness accounts of the crime itself, and (3) that this "tip" was subsequently corroborated to some extent just prior to the arrest when Officer Hintemeyer observed the knife on the coffee table in front of appellant. As to the reliability of the source of the information, there is no question that Hopson's status as a retired policeman provided a "reasonable basis" for concluding that he was a reliable source. Having concluded that there was probable cause to arrest appellant, we now confront appellant's argument relating to an alleged illegal search.

In arguing that Officer Hintemeyer's entrance into the dwelling at 3519 Mulberry Way was illegal, appellant overlooks the fact that Mrs. Boston, the owner of the premises, invited Hintemeyer to come in. Under these circumstances, appellant cannot challenge the officer's entry into the Boston home. See *Commonwealth v. Hardy*, 423 Pa. 208, 216, 223 A.2d 719, 723 (1966); *Commonwealth v. McKenna*, 202 Pa. Superior Ct. 360, 362, 195 A.2d 817-18 (1963); *Commonwealth v. Smith*,

201 Pa. Superior Ct. 511, 516, 193 A.2d 778, 780 (1963). Once Officer Hintemeyer was inside, appellant, the knife, and certain items of appellant's clothing which were subsequently seized were in plain view. Since his entry into the house was legitimized by the owner's invitation, and thus by her consent, his subsequent seizure of the evidence in question was also proper. As stated by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) : "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in 'hot pursuit' of a fleeing suspect. Warden v. Hayden, *supra*; cf. Hester v. United States, 265 U.S. 57. And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. Chimel v. California, 395 U.S., at 762-763. Finally, the 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. Harris v. United States, 390 U.S. 234; Frazier v. Cupp, 394 U.S. 731; Ker v. California, 374 U.S., at 43. Cf. Lewis v. United States, 385 U.S. 206." The initial intrusion in the instant case was justified not only as being consented to but also as being incidental to a valid arrest. (*See* discussion *supra*). Accordingly, the court below was correct in refusing to suppress the evidence in question.

Appellant's other contention of error relates to the trial court's failure to instruct the jury with regard to the crime of voluntary manslaughter. However, since (1) no request for such instruction was made, (2) no objection was taken to the charge on this basis, and (3)

this point was not raised in post-trial motions, the appellant relies on the "basic and fundamental error" rule as enunciated by this Court in *Commonwealth v. Jennings*, 442 Pa. 18, 274 A.2d 767 (1971), and *Commonwealth v. Miller*, 448 Pa. 114, 290 A.2d 62 (1972). We find this doctrine wholly inapplicable to the present situation. The doctrine of basic and fundamental error has been held to apply only in those limited situations where the alleged error in the charge "affects the merits or justice of the case or . . . offends against the fundamentals of a fair and impartial trial." *Commonwealth v. Jennings*, 442 Pa. at 25, 274 A.2d at 770 (1971). In the present case, the only evidence even remotely supporting a theory of voluntary manslaughter is that appellant and the victim were engaged in an argument over three dollars which the victim owed appellant. This disagreement ultimately led to the stabbing of the deceased. There was no evidence that the victim provoked appellant's wrath in any way except by his failure or inability to repay the loan. We cannot perceive any factual basis in this situation for a finding of legally adequate provocation. *See Commonwealth v. Pavillard*, 421 Pa. 571, 575, 220 A.2d 807, 810 (1966). Even under the new Crimes Code definition of "serious provocation," which is required as an element of voluntary manslaughter,[2] the circumstances of the instant slaying would not qualify. "Serious provocation" is "[c]onduct sufficient to excite an intense passion in a reasonable person." Act of December 6, 1972, P. L. 1482, No. 334, §1, 18 Pa.C.S. §2301. The refusal to pay a small debt could hardly be viewed as such conduct. Thus, under either standard, there was insufficient evidence of legally sufficient provocation. In any event, we certainly cannot view the trial court's failure to

---

[2] Act of December 6, 1972, P. L. 1482, No. 334, §1, 18 Pa.C.S. §2503(a).

give an instruction on voluntary manslaughter as basic and fundamental error, if indeed it was error at all.[3]

Accordingly, the judgment of sentence is affirmed.

Mr. Justice POMEROY and Mr. Justice MANDERINO concur in the result.

---

[3] We are not confronted with a situation where there is insufficient evidence of legal provocation but where a voluntary manslaughter charge has been requested and denied by the trial court or where a specific exception on this basis has been taken to the charge as given. In such a situation, the members of this Court have taken widely divergent views. *See, e.g., Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974); *Commonwealth v. Cannon,* 453 Pa. 389, 309 A.2d 384 (1973).

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in that part of the majority's opinion holding there was probable cause to arrest appellant.

However, I agree that appellant is not entitled to a new trial on account of the trial court's failure to charge on voluntary manslaughter, only because appellant did not request such a charge, did not except to the trial court's failure to so charge, and did not raise this issue in post-trial motions. Issues not properly raised in the trial court will not be considered on appeal. See *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972); Pa. R. Crim P. 1119(b).