333 A.2d 883

**COMMONWEALTH of Pennsylvania**

v.

**Craig BAILEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 21, 1972.

Argued Nov. 18, 1974.

Decided March 18, 1975.

500

Robert B. Mozenter, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Division, B. Leadbetter, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Prior to trial on a murder indictment the appellant, Craig Bailey, filed an application to suppress evidence which was alleged to be the product of an illegal police detention. The application was denied and the evidence consisting of oral inculpatory statements made by the appellant to the police was introduced by the prosecution during the appellant's trial by jury which resulted in a verdict of murder in the first degree. Post-trial motions were denied and the appellant received a sentence of life imprisonment. This appeal followed.

On January 16, 1970, two men committed a robbery at John Wallace's Food Market in Philadelphia. John Wal-

lace, who was shot during the robbery, died on January 23, 1970. On that date, officers from the homicide division of the police department began an investigation during which information was received from an informer, whose identity was never revealed by the officers, that the appellant, with a .22 revolver in his possession, had been seen in the neighborhood on the evening of the robbery. Later, the officers learned that the appellant was in jail awaiting disposition of charges, which were not related to the food market robbery. Those charges were all terminated in appellant's favor. One of the pending charges was dismissed on February 11, 1970, and on February 20, 1970, the appellant was found not guilty on the other pending charge.

Following the not guilty verdict on February 20, there were no charges pending against the appellant and he was entitled to leave the courtroom free of any restraint by law enforcement officials. The prosecution disputed this fact in its brief submitted to this Court prior to oral argument. That brief contained an assertion that the appellant was "also in violation of parole," and thus his continued detention was proper even after he was found not guilty. Because close scrutiny of the almost 400 page record prior to oral argument, failed to reveal any basis for the prosecution's assertion, this Court, at oral argument, requested a supplemental brief concerning the prosecution's assertion of its original brief. The supplemental brief conceded that the assertion was "error" and there was no basis in the record for the assertion. There is thus no dispute that appellant's continued detention on Feburary 20, 1970, after the not guilty verdict, was not based on any pending charges of any kind. Instead, it was based on an arrest, immediately after the not guilty verdict, by officers of the homicide division who had obtained a judicial order, called a prisoner's bring-up order, authorizing the taking of appellant to the Police Administration Building. Appellant was thus arrested at a

time when he was not being lawfully detained for any reason.

The appellant, after his arrest, was brought to the Police Administration Building at 2:00 p. m., the afternoon of February 20, 1970. He was given *Miranda* warnings about one hour after his arrival. Four separate interrogation sessions followed during which the appellant was handcuffed to a chair. The last such session ended at 12:30 a. m., the following day, ten and one-half hours after the appellant's arrival. During each of the four interrogation sessions, inculpatory statements made by the appellant were written down by one of the interrogating officers. The appellant refused to sign any of the written statements.

The appellant claims that the oral inculpatory statements should have been suppressed since they were the product of an illegal detention. We agree and reverse.

██ The detention of a citizen is illegal if the police do not have the constitutionally required probable cause to seize his person. U.S.Const. amend. IV; Pa.Const. art. I, § 8 P.S.; *see Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973); *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). Evidence obtained during an illegal police detention must be suppressed unless the prosecution can establish that the evidence was the product of some cause other than the illegal detention. *See Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L. Ed.2d 676 (1969); *Bertrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973). We must thus determine (1) whether the appellant was illegally detained by the police, and if he was (2) whether the prosecution can establish that the appellant's oral statements were the produce of some

cause other than the illegal detention. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Hale v. Henderson,* 485 F.2d 266 (6th Cir. 1973).

▉ Since all pending charges, prior to appellant's detention in the Police Administration Building, have been terminated in appellant's favor, there was no reason to continue to deprive the appellant of his liberty *unless* the officers, who were investigating the food market robbery, had probable cause to detain the appellant. The prosecution claims that there was probable cause in this case based on information received from a trustworthy person interviewed by the police during their investigation. We can only accept that contention, however, if, from the facts disclosed by the police, two reasonable inferences can be drawn. The required inferences are that (1) the informer is trustworthy and (2) the facts implicating the person seized were reliably witnessed and not fictitious. *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Commonwealth v. Smith,* 453 Pa. 326, 309 A.2d 413 (1973).

In this case neither of the two required inferences can be drawn from the disclosed facts. First, the trustworthiness of the informer was not established. The officer who received the information did not disclose the identity of the informer. The officer testified that (a) he had known the informer for four or five years, (b) the informer was reliable and trustworthy, and (c) previous information received from the same informer was helpful in other arrests and investigations, including the solving of other homicides. There was no other information disclosed by the police about the informer.

▉▉ General conclusions concerning the trustworthiness of an informer are not sufficient. Specific facts must be disclosed. "Some of the underlying circum-

stances from which the officer concluded that the informer . . . was 'credible' [must be disclosed] . . ." *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964). "A mere assertion . . . that the informer was 'reliable' does not satisfy the *Aguilar-Spinelli* test." *Commonwealth v. Hall,* 451 Pa. 201, 207, 302 A.2d 342, 345 (1973). There must be some factual circumstances presented which would indicate that the informer was trustworthy. Mere conclusions on the part of the police are not enough. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). In this case, the police disclosed only general information. The officer could not state how many arrests ever resulted or whether any convictions were ever obtained from the information supplied in the past by the informer. The officer's conclusions of reliability and trustworthiness were thus not supported by sufficient underlying circumstances. A neutral judicial officer could not have drawn the required inference that the informer was trustworthy.

■■ Second, the facts disclosed are also insufficient to permit a reasonable inference that facts implicating the appellant were reliably witnessed and not fictitious. The only information received by the police was that the appellant *had been seen.* There were no "underlying circumstances" presented to indicate the reliability of the original source of the information. There are no facts indicating whether the informer personally observed the appellant; or whether the information was obtained from another person who observed the appellant; or whether the information was fictitious—an unsupported rumor circulating without a reliable origin. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973). In *Commonwealth v. Smith,* 453 Pa. 326, 309 A.2d 413 (1973), an informer told the

police that he "found out" that two persons had narcotics in their possession. *Smith* pointed out the fatal flaw in such information—there were no facts disclosed as to how the informer came by his information. The police may not rely on the primary police informer's judgment as to the reliability of a possible secondary informer. *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972) ; *see Commonwealth v. Smith*, 453 Pa. 326, 309 A.2d 413 (1973).

■■ Since neither of the two required inferences can be drawn from the facts disclosed by the police, we must conclude that the detention of the appellant was without probable cause and, thus illegal. The oral statements of the appellant obtained during the illegal detention, should have been suppressed *unless* the prosecution has established that the evidence was the product of causes sufficiently distinguishable from the illegal detention.

"[O]nce the primary illegality . . . is established, the burden is on the [prosecution] to establish that the confession has been come at 'by means sufficiently distinguishable to be purged of the primary taint' rather than 'by exploitation of that illegality.' " (Citations omitted.)

*Betrand Appeal*, 451 Pa. 381, 389, 303 A.2d 486, 490 (1973).

■ The prosecution has not met its burden in this case. There is no evidence of any events which gave rise to the oral statements of the appellant other than the illegal detention. *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973). There was no break in the chain of events which would establish that the oral statements were free of the taint of the illegal detention. *Hale v. Henderson*, 485 F.2d 266 (6th Cir. 1973); *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973). The giving of the *Miranda* warnings alone is not sufficient to purge the taint

of the illegal detention. *Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973). The prosecution's failure to meet its burden of proving that the appellant's oral statements were the product of causes other than the illegal detention, requires that the oral statements be suppressed. Their admission during the appellant's trial was reversible error.

Judgment of sentence reversed and a new trial awarded.

NIX, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

POMEROY, J., filed a concurring opinion.

JONES, C. J., concurred in the result.

POMEROY, Justice (concurring).

I concur in the result for the reasons expressed in the concurring opinion of this writer in *Betrand Appeal,* 451 Pa. 381, 392, 303 A.2d 486, 492 (1973).

ROBERTS, Justice (concurring).

I join in the Opinion of the Court in all respects except for the discussion of whether the trustworthiness of the informant was sufficiently established to satisfy the requirements expressed in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). There was no basis for the conclusion that the underlying facts were reliably witnessed and, thus, there was no probable cause regardless of the informant's reliability. Because determination of this question is not necessary to the disposition of the case, I do not reach it.