Opinion by
Packer, J.,
The defendant appeals from conviction of unlawful use and possession of narcotics. He contends that his arrest was without “probable cause” and that therefore evidence of contraband discovered on his person during the ensuing search should have been suppressed.
At the suppression hearing the arresting detective detailed the circumstances which led him to arrest defendant. After entering a friend’s stamp shop he heard the defendant ask for one thousand glassine envelopes and then say to a companion “we ought to make a thousand dollars out of this.” He recalled that his philatelist friend had complained of a disturbing increase of sales of the envelopes to persons who seemed to be drug pushers rather than stamp collectors. The detective believed that the store was located in an area frequented by drug pushers who would obtain their supply in New York City and return by train, debarking at a nearby terminal. Based upon some experience with the hobby of stamp collecting as a boy, he concluded that no collector would have a use for that quantity of glassine envelopes. Moreover, he had seen these envelopes used to package heroin on numerous occasions. During part of his duty as a police officer he worked down the hall from the narcotics unit and based upon many opportunities to observe addicts, he believed that the rapid speech, watery eyes and giddy, carefree, over-exaggerated behavior of the defendant suggested that he was under the influence of narcotics.
It is now black letter law that the test of probable cause is not mere suspicion or conjecture but rather is whether the facts and circumstances of a particular situation would warrant a man of reasonable caution to believe that a crime has been or is being committed. Brinegar v. United States, 338 U.S. 160, 176 (1949) is the generally recognized standard bearer in the proba *358 ble cause area and contains a thoughtful analysis of the tension created by the underlying policies: “These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community’s protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers’ whim or caprice.” That case also teaches that (338 U.S. at 175) : “In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.”
The standard of probable cause is more easily formulated and analyzed than given application to a set of facts. Fortunately we are aided by certain appropriate corollary principles.
Because the whole is necessarily more than any of its parts in law as well as mathematics the standard of probable cause must be applied to the totality of the circumstances facing the officer and not each individual element apparent before the arrest, Commonwealth v. Hughes, 219 Pa. Superior Ct. 181, 188, 280 A. 2d 556, 560 (1971) (Jacobs, J., refers to the “cumulation of circumstances”). The circumstances which faced the *359 arresting detective were replete with facts which suggested that defendant was associated with the illicit drug trade. Even if we might agree with counsel for appellant that no element by itself provided sufficient inferences to warrant a proper arrest, it is apparent that the volume of such facts in the instant case had reached that point where an inductive analysis of all circumstances together yielded more than a sufficient basis for this arrest in light of the detective’s police experience. His lack of knowledge that such a large quantity of envelopes could be used by some stamp collectors or other persons would not bring bis decision to arrest beneath the constitutional standard.
Because a police officer must of necessity draw upon his experience in reaching a decision to arrest, our review should, in appropriate circumstances, focus on the view of the officer with his skill and knowledge rather than that of an average citizen under similar conditions. Commonwealth v. Johnson, 198 Pa. Superior Ct. 51, 182 A. 2d 541 (1962) (allocatur denied). Appellant refers to several medical texts and makes a strong contention that the behavior observed by the detective was not symptomatic of drug usage. However, an officer on the beat is not required to have a medical degree to draw inferences from behavior such as defendant’s. His extensive experience observing narcotics addicts and in making some drug related arrests provided sufficient background to have made his evaluation. Commonwealth v. Garrick, 210 Pa. Superior Ct. 124, 232 A. 2d 8 (1967); Commonwealth v. Johnson, supra. Under the facts of the instant case where many other factors combine to yield enough inferences to provide probable cause, this medical argument is not persuasive.
Judgment of sentence affirmed.