524 A.2d 998

Arbitration Between Ridley Park Police and Borough of Ridley Park. Petition of Delaware County Lodge No. 27, Fraternal Order of Police. Borough of Ridley Park, Appellant.

Argued February 26, 1987, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Arthur Levy,* with him, *Ronald J. Klimas* and *Stephen J. Polaha;* Of Counsel: *Eckell, Sparks, Levy, Auerbach & Monte,* for appellant.

*Alexander A. DiSanti, Richard, DiSanti, Hamilton, Gallagher & Paul,* for appellee.

OPINION BY SENIOR JUDGE BARBIERI, April 27, 1987:
The Borough of Ridley Park (Borough) appeals from an order of the Delaware County Court of Common Pleas striking from an arbitration award a portion of a paragraph dealing with police disability pensions.

Delaware County Lodge No. 27, Fraternal Order of Police (FOP), is the certified bargaining representative for police officers employed by the Borough. In 1985, the FOP. and the Borough entered into negotiations, pursuant to Act 111,[1] for a new collective bargaining agreement to replace the existing agreement which was to expire at the end of the year. During the course of

---

[1] Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§217.1-217.10 (Act 111), providing policemen and firemen the right to bargain collectively with their public employers concerning the terms and conditions of their employment.

the negotiations, the parties reached an impasse over the definition of disability for purposes of pension entitlement.

At least since 1976, the collective bargaining agreement between the Borough and its police force provided that a police officer was entitled to a disability pension if the officer was "permanently and totally disabled from performing police work for the Borough." The FOP maintained that the new agreement should retain the language which had appeared in the previous agreements, while the Borough insisted that disability be defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." The dispute was submitted to arbitration pursuant to Act 111. In Paragraph 5(a) of its award, the arbitration panel provided that effective January 1, 1986, disability was to be given the definition proposed by the Borough.[2]

The FOP appealed and the lower court modified the arbitration award by striking Paragraph 5(a).

The Borough's police pension fund is established pursuant to Section 1 of the Act of May 29, 1956, P.L. (1955) 1804, *as amended,* (Act) 53 P.S. §767. On appeal, the Borough contends that Paragraph 5(a) of the award was proper and that there is no language in Section 1 of the Act which prohibits such a definition of disability. The Borough argues further that, in administering the pension fund, it may prescribe substantial regulations

---

[2] Paragraph 5(a) of the award specifically provides:

5. *Disability*

(a) Effective January 1, 1986, the definition of disability will be revised . . . as follows:

'A disability shall be defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment.'

which include defining disability as was done in the award.

We note initially that our scope of review is in the nature of a narrow *certiorari* and thus limited to questions of jurisdiction, the regularity of the proceedings before the arbitrators, questions of excess in the exercise of powers, and constitutional questions. *Allegheny County Police Association v. County of Allegheny*, 100 Pa. Commonwealth Ct. 327, 514 A.2d 964 (1986), citing *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969).[3] On appeal to the lower court, the FOP contended that Paragraph 5(a) of the arbitration award required the Borough to take action which it was legally prohibited from taking and which it could not, therefore, undertake voluntarily.

An arbitration award may not require a governing body to carry out an illegal act and may only require a public employer to do that which it may do voluntarily. *Cheltenham Township v. Cheltenham Township Police Department*, 11 Pa. Commonwealth Ct. 348, 312 A.2d 835 (1973). "Therefore, there must be excluded from the scope of [Act 111] and necessarily outside the definition of bargainable issues, any subject which would

---

[3] In *Washington Arbitration Case*, the Pennsylvania Supreme Court held that an Act 111 arbitration award was reviewable under narrow *certiorari* for questions of jurisdiction, the regularity of the proceedings, questions of excess in the exercise of powers, and constitutional questions. In *Appeal of Upper Providence Township*, 93 Pa. Commonwealth Ct. 272, 502 A.2d 263 (1985), we held that pursuant to Section 7302 of the Uniform Arbitration Act, 42 Pa. C. S. §7302, Act .111 arbitration awards were reviewable for errors of law. However, in light of our Supreme Court's decisions in *Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 499 A.2d 570 (1985) and *Lower Merion Fraternal Order of Police Lodge Number Twenty-Eight v. Township of Lower Merion*, 511 Pa. 186, 512 A.2d 612 (1986), we subsequently held in *Allegheny County* that narrow *certiorari* is the proper standard of review for appeals of Act 111 arbitration awards.

require the government employer to perform any duty or to take some action which is specifically or impliedly prohibited by the statutory law governing its affairs. Such subjects are, of course, equally beyond the scope of an arbitration award." *Id.* at 352-353, 312 A.2d at 838.

> Section 1 of the Act provides, in pertinent part: Each borough, town, and township of this Commonwealth maintaining a police force of three or more full-time members shall . . . establish, by ordinance or resolution, a police pension fund or pension annuity. . . . *Such fund shall be under the direction of the governing body of the borough, town or township, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service, or disability,* and may prescribe for the benefit (i) of widows, and if no widow survives or if she survives and subsequently dies or remarries, then (ii) of child or children under the age of eighteen years, of members of the police force or of members retired on pension. All such pensions as shall be allowed to those who are retired by reason of disabilities shall be in conformity with a uniform scale. (Emphasis supplied.)

Section 1190 of The Borough Code,[4] provides for removal of a police officer for, among other things, "disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service." With regard to an honorable dis-

---

[4] Act of February 1, 1966, P.L. (1965), *as amended,* 53 P.S. §46190(1).

charge for physical disability, pursuant to Section 1190, this Court has stated that the Legislature "intended the disability to be one which rendered the officer incapable of performing *his normal duties permanently.*" *Crawford v. Bureau of Lewisburg,* 42 Pa. Commonwealth Ct. 260, 265, 401 A.2d 385, 388 (1979) (emphasis partly in original and partly supplied).

Although the Borough may discharge police officers who are permanently disabled from performing police work, it claims that it does not have to then award these officers a pension as long as they are able to engage in "substantial gainful activity." The Borough admits that it cannot prescribe regulations which contravene Section 3 of the Act, 53 P.S. §769, setting forth age and service requirements for pension eligibility. However, it claims that there are no such statutory restrictions on how disability may be defined for the purposes of pension entitlement. The Borough thus argues that it may, pursuant to Section 1 of the Act, prescribe a regulation defining disability as was done in Paragraph 5(a) of the arbitration award. The Borough is thus contending that it may prescribe regulations which would render some police officers, honorably discharged from service pursuant to Section 1190 of The Borough Code, ineligible for pension benefits. We disagree.

The pertinent language of Section 1 of the Act provides that a borough employing three (3) or more full-time police officers "*shall* . . . establish . . . a police pension fund or pension annuity. . . . Such fund shall be under the direction of the governing body of the borough . . . and applied under such regulations as such governing body . . . may prescribe for the benefit of *such members* of the police force as shall receive honorable discharge therefrom by reason of age and service, or disability. . . ." (Emphasis supplied.)

The clear language of this section mandates that *all* police officers honorably discharged for age and service,

or disability, be eligible to receive a pension. It does not permit the Borough to prescribe regulations which would re-define pension eligibility. Therefore, as long as the Borough may honorably discharge a police officer who is disabled from performing police work, it may not deny that officer a pension simply because he is able to obtain other employment constituting "substantial gainful activity."

Indeed, if we were to accept the Borough's argument that Section 1 of the Act authorizes it to prescribe regulations rendering some police officers honorably discharged for disability ineligible to receive a pension, we would have to find that it could likewise do the same with regard to those police officers honorably discharged for age and service. This is because the language in Section 1 of the Act, authorizing Borough regulations, is equally applicable to both categories of honorable discharge. Certainly we cannot say that the Legislature intended to permit the Borough to withhold pensions from those police officers who reached the mandatory retirement age and who served the minimum number of years on the force and are, therefore, entitled to a pension under Section 3 of the Act.

In further support of its position, the Borough raises the fact that those police officers covered by the Pennsylvania Municipal Retirement System may retire on a disability allowance only if they are "unable to engage in any gainful employment."[5] We fail to see why we should apply the definition of disability contained in a totally separate act to the Act before us, especially where such a definition would clearly be inappropriate in light of Section 1190 of The Borough Code.

---

[5] Section 313(a) of the Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, *as amended,* 53 P.S. §881.313(a) (applying to municipal policemen and firemen).

Underlying the Borough's position is an apparent concern that unless disability is defined as in Paragraph 5(a) of the arbitration award, some police officers who are disabled from performing police work will be able to receive one hundred (100%) percent of their former salary, while still able to earn a salary from employment in some non-related field. This concern is unfounded as Section 5 of the Act, 53 P.S. §771, imposes a cap on disability pensions of one-half (1/2) of the police officer's average monthly salary. *Board of Supervisors for Newton Township v. Chirico*, 88 Pa. Commonwealth Ct. 120, 488 A.2d 1180 (1985).

Further, as the FOP points out, by defining disability as in the arbitration award, the Borough could conceivably withhold a pension from a veteran police officer who, although honorably discharged for a service-related disability, is able to obtain some other employment, even if that employment only pays a fraction of his former salary. We find that the Legislature could not have intended such a result.

We conclude that Section 1 of the Act does not permit the Borough to issue a regulation which would render some police officers who are honorably discharged on account of a disability ineligible to receive a pension. Therefore, Paragraph 5(a) of the arbitration award requires the Borough to take some action prohibited by a statute governing its affairs and is outside the scope of Act 111. The Board of Arbitration exceeded its authority by including Paragraph 5(a) in the arbitration award.

Accordingly, we affirm the order of the lower court striking Paragraph 5(a) from the arbitration award.

ORDER

AND NOW, this 27th day of April, 1987, the Order of the Delaware County Court of Common Pleas dated July 2, 1986, striking Paragraph 5(a) from the arbitration award and otherwise confirming said award, is affirmed.